**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DIAMOND RESIDENTIAL MORTGAGE CORPORATION,** | ) ) ) | |
| Plaintiff, | ) ) | No. _____ |
| vs. | ) ) | |
| **LIBERTY SURPLUS INSURANCE CORPORATION,** | ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Diamond Residential Mortgage Corporation ("Diamond Mortgage"), through its attorneys, Manatt Phelps & Phillips, LLP, complains against Defendant Surplus Insurance Corporation ("Defendant") and states as follows:

1.     This is an action for breach of two different policies of insurance.  As a direct and proximate result of these denials, Diamond Mortgage has suffered damages for which this suit seeks recovery.

2.     Diamond Mortgage is an Illinois corporation in the business of providing mortgage loans to consumers in Illinois and several other states.

3.     In Illinois, Diamond Mortgage is licensed under the Residential Mortgage License Act of 1987 (the "Mortgage Act").

4.     Defendant is a New Hampshire corporation in the business of providing business insurance under various policies of insurance with its principal office in Boston, Massachusetts.

5.     This Court has subject matter jurisdiction under 28 USC 1332(a) as Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds $1,190,000.

1

6.      Venue is proper in this Court under 28 USC 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred in this District.   Specifically, Diamond Mortgage, the insured, is based in Illinois within this District.

7.      At all times relevant to this complaint, two insurance policies sold by Defendant to Diamond Mortgage were in effect: (i) a Professional Liability Mortgagee's Errors and Omissions (Policy No. MBER000086-0117) (the "E&O Policy," a true and correct copy of which is attached as Exhibit 1 and incorporated here) and (ii) a Mortgage Bankers Fidelity Bond (Policy No. MBBR00084-0117) (the "Bond," a true and correct copy of which is attached as Exhibit 2 and incorporated here).

8.      Diamond Mortgage timely notified Defendant of a claim under the E&O Policy and of a loss under the Bond, yet Defendant has denied notice on a plainly bad-faith basis as to the Bond.   Specifically, Diamond Mortgage gave Defendant notice on March 9, 2018, just days after the insurable occurrence, to profliabclaims@libertyiu.com.   Defendant acknowledged receipt four days later on March 13, 2018.   In recent pre-suit correspondence, Defendant *still* maintains the March 9, 2018 notice it itself acknowledged receiving was applicable only to the E&O Policy, not the Bond, even though both the E&O Policy and the Bond specify that notice should be sent to the same email address, profileabclaims@libertyiu.com, and directed to the same entity, Liberty Surplus Insurance Corporation, and Diamond Mortgage's notice did not state it was limiting the notice to one or the other.   In other words, Diamond Mortgage precisely followed Defendant's specified notice procedures, yet Defendant internally failed to consider both the Policy and Bond.

9.      Defendant has denied coverage or obligation under the E&O Policy and Bond, thereby wrongfully breaching its obligations under each and causing Diamond Mortgage to incur damages as more fully set forth below.

10.     Specifically, as described below, the underlying loss occurred because of the alleged dishonest acts of a single loan officer employee and board member of Diamond Mortgage.   This is precisely the sort of loss that an E&O policy and\or a fidelity bond traditionally cover, yet Defendant has denied coverage under *both*.

11.     Defendant's failure to pay was vexatious and unreasonable and constituted a violation of Section 155 of the Illinois Insurance Code. 215 ILCS 5/155.

## FACTUAL BACKGROUND

### I.  The DFPR Action against Diamond Mortgage Based on Wrongful Conduct By Chris Schaller

12.     In or just prior to March 2018, the Illinois Department of Financial and Professional Regulation ("DFPR") began an investigation of Diamond Mortgage's Springfield Illinois branch office (the "Springfield office") pursuant to its authority under the Mortgage Act.

13.     On March 2, 2018, the DFPR issued a request for documents and other information under Section 4-1(h) of the Mortgage Act.

14.     The investigation centered on the activities of a senior Diamond Mortgage employee at the time, Chris Schaller.

15.     At the time, Schaller was the senior loan officer at the Springfield office, a board member and minority stockholder in Diamond Mortgage.

16.     The DFPR investigation first resulted in an "Order Imposing Emergency Suspension of Branch License" effectively closing the Springfield office on March 7, 2018 (the

day prior to the above-described notice sent and admittedly received by Defendant). A true and correct copy of that order is attached as Exhibit 3 and incorporated here.

17.     At some point in 2018, the Office of the Attorney General of the State of Illinois also began an investigation of Diamond Mortgage's Springfield Office.

18.     The investigations continued until October 23, 2018 when Diamond Mortgage entered into a consent agreement with DFPR in which it agreed to pay a fine of $75,000 to the DFPR to reimburse it for its costs of investigation, and separately $1,200,000 to the Attorney General's Consumer Trust Account to compensate consumers who were injured by Schaller's activities. A true and correct copy of the consent agreement is attached as Exhibit 4 and incorporated here. All amounts have been paid by Diamond Mortgage except the final payment which comes due October 23, 2019.

19.     During the course of the investigation, Diamond Mortgage also incurred and paid attorneys' fees.

## II.  Defendant's Failure to Pay Under the E&O Policy

20.     Diamond Mortgage purchased the E&O Policy to protect itself against the wrongful acts of employees and board members such as Schaller.

21.     Diamond Mortgage notified Defendant of a claim under the E&O Policy on March 9, 2018.

22.     Defendant acknowledged receipt of the notice on March 13, 2018 and paid $10,000 as partial reimbursement of Diamond Mortgage's attorneys' fees incurred during the investigation.

23.     Defendant has refused to pay any additional attorneys' fees or any part of the consent amount incurred by Diamond Mortgage.

24.     Under the E&O Policy, Defendant agreed to pay Diamond Mortgage "all sums in excess of the applicable Deductible amount . . . which [Diamond Mortgage] shall become obligated to pay as **Damages** and **Claim Expenses** resulting from **Claims** . . . (E&O Policy Section I (A) (1).

25.     The demand made by the DFPR and the action it filed as No.-2018-MBR-CD-01-b constitutes a "Claim" as defined in Section III (B) of the E&O Policy.

26.     The amount payable under the consent decree, at least to the extent that it was designated as payment to the attorney general's reimbursement fund, constitutes "Damages" as defined in Section III (D) of the E&O Policy.

27.     The amount paid to its attorneys during the course of the investigation constitutes "Claims Expenses" as defined in Section III (C) of the E&O Policy.

28.     Diamond Mortgage's Damages and Claims Expenses result from Claims as provided under the E&O Policy.

29.     Defendant has refused to pay any additional amounts to Diamond Mortgage either with respect to Damages or Claims Expenses.

30.     Defendant has set forth four grounds for its refusal to pay Diamond Mortgage's Damages and Claims Expenses.

31.     First, Defendant asserts that Diamond Mortgage's Damages and Claims Expenses result from a "Disciplinary Proceeding" which it contends is excluded from the definition of a "Claim" under the E&O Policy. However, "Disciplinary Proceeding" is defined as a proceeding commenced by a regulatory or disciplinary board or agency to _investigate_ charges of professional misconduct in the performance of **Professional Services**. The "Disciplinary Proceeding" clause specifically does *not* purport to include any losses merely related to or

connected to such investigations. Diamond Mortgage's liability of $1,200,000 to reimburse consumers is a "compensatory" payment resulting from a Consent Order, not the investigation, thus the exclusion for "Disciplinary Proceedings" is not applicable to the $1,200,000 liability imposed by the Consent Order. Furthermore, the $1,200,000 liability was incurred as a consequence of potential action by the Illinois Attorney General's office as memorialized by the Assurance of Voluntary Compliance; the Illinois Attorney General is not a "regulatory or disciplinary board or agency."

32. Second, Defendant asserts that Diamond Mortgage's damages and claims expenses are excluded by exclusion (N) which excludes Claims brought by government entities. However, exclusion (N) is intended only to limit claims brought by government agencies constituting "Disciplinary Proceedings" as opposed to claims brought on behalf of injured consumers. Moreover, there is an express exception to exclusion (N) for Claims brought by government entities who are themselves "customers or clients" of the insured which is applicable here based on Diamond Mortgage's sale of mortgage loans it originated to government agencies (and such loans were among those that were the subject of the liability).

33. Third, Defendant asserts that Diamond Mortgage's damages here are not "Damages" as defined in the E&O Policy but are in fact "fines and penalties" which are excluded under Section I (D) (4) (ii) of that policy. However, a payment to a fund expressly earmarked to compensate consumer victims is not a fine or penalty.

34. Fourth, Defendant asserts that Diamond Mortgage failed to comply with its cooperation obligation in settling the Claims as provided in Section VIII (A) of the E&O policy. However, Defendant had notified Diamond Mortgage that it had paid $10,000 and that no

additional coverage was forthcoming, so that any further communication with Defendant would have been futile.

35.    Based on the inapplicability of any of Defendant's assertions supporting non-payment of Diamond Mortgage's damages and claims expenses, Defendant is in breach of its obligations under the E&O Policy.

### III. Defendant's Outright Refusal to Pay on the Bond

36.    Diamond Mortgage purchased the Bond to protect it against losses such as the one it has incurred here.

37.    Despite having knowledge of a potential loss under the Bond since March 2018 at the time it received notice under the E&O Policy and despite having received express notice of a loss in November 2018, Defendant has refused to pay any amount with respect to Diamond Mortgage's loss.

38.    Under the Bond, Defendant agrees to indemnify Diamond Mortgage for "Loss resulting directly from dishonest or fraudulent acts committed by an **Employee** acting alone or in collusion with others." (Bond at I (A)).

39.    The payment made by Diamond Mortgage under the Consent Agreement constitutes a loss resulting from the dishonest of fraudulent acts of Schaller and Defendant as agreed to indemnify Diamond Mortgage for this loss.

40.    Defendant is in breach of the Bond for failing to indemnify Diamond Mortgage

41.    Defendant has asserted two positions to support its non-payment. Neither is applicable here.

42.    First, Defendant asserts that the loss Diamond Mortgage has incurred is not a "direct" loss because the loss was in the first instance suffered by third parties (the wronged consumers) who in turn, through the Illinois Attorney General, sought recovery from Diamond

7

Mortgage, and conversely that the loss is "indirect or consequential" and excluded by 2(n). However, neither "directly" nor "indirect or consequential" is defined in the Bond, and Defendant's construction is contrary to subsection (2) which does not require that the entire loss must be gained by the dishonest employee to be coverable. Moreover, the discovery provision expressly states that "Discovery also occurs when the Insured receives notice of an actual or potential claim in which it is alleged that the Insured is liable to a third party under circumstances which, if true, would constitute a loss under this Bond." (Bond Section II (G) (3) at 18). Thus, a loss based on liability to a third party is not automatically excluded under the Bond, otherwise the language quoted in the previous sentence would be superfluous. Furthermore, Diamond Mortgage is not seeking to be insured for lost profits or revenue that resulted from Schaller's conduct or the investigation (which harm was substantial); Diamond Mortgage's sole claim is as to the direct liability that Schaller's conduct resulted in under any proximate, direct, and but-for test.

43.     Second, Defendant asserts that Diamond Mortgage's notice under the Bond was untimely. In doing so, Defendant asserts that Diamond Mortgage's notice of the claim under the E&O Policy on March 9, 2018 was insufficient to put Defendant on notice of a potential loss under the Bond.  But this is not a case where Diamond Mortgage sent the notice to one arm of Defendant's sprawling insurance infrastructure and not another, or where Diamond Mortgage is merely reliant on Defendant's acknowledgment of receipt of the notice for E&O purposes as also *de facto* applying to the Bond.  Defendant provided timely notice on March 9, 2018 to the specific email address and entity specified in the Bond.  Both the E&O Policy and Fidelity Bond were issued by the same entity (Defendant Surplus Insurance Corporation), signed by the same corporate officers, and specify the same entity, address and email for notice of claims.

44.     Based on the inapplicability of any of Defendant's assertions supporting non-payment of Diamond Mortgage's loss, Defendant is in breach of its obligations under the Bond.

### COUNT I – BREACH OF E&O POLICY

45.     Diamond Mortgage realleges and incorporates the allegations of Paragraphs 1-44 above.

46.     Diamond Mortgage has performed all the obligations required of it under the E&O Policy.

47.     Defendant has refused and continues to refuse to pay Diamond Mortgage all amounts due and owing under the E&O Policy.

48.     Defendant is in breach of its obligations under the E&O Policy.

49.     Diamond Mortgage has been damaged in the amount of the payment it made under the consent agreement with the IDPFR, the amount of attorneys' fees it has incurred and paid in connection with the IDPFR investigation and the consent agreement, and additional amounts to be proven at trial.

50.     Defendant's failure to pay under the E&O Policy is vexatious and unreasonable and Diamond Mortgage is entitled to an additional recovery under Illinois Insurance Code Section 155.

### COUNT II – BREACH OF FIDELITY BOND

51.     Diamond Mortgage realleges and incorporates the allegations of Paragraphs 1-44 above.

52.     Diamond Mortgage has performed all the obligations required of it under the Bond.

53.     Defendant has refused and continues to refuse to pay Diamond Mortgage all amounts due and owing under the Bond.

9

54.     Defendant is in breach of its obligations under the Bond.

55.     Diamond Mortgage has been damaged in the amount of the payment it made under the consent agreement with the IDPFR.

56.     Defendant's failure to pay under the E&O Policy is vexatious and unreasonable and Diamond Mortgage is entitled to an additional recovery under Illinois Insurance Code Section 155.

**WHEREFORE**, Diamond Residential Mortgage Corporation prays for judgment in its favor and against Defendant Surplus Insurance Corporation, awarding it damages and costs of suit, attorneys' fees, and such further relief as deemed proper by the Court.

Dated: September 27, 2019            **DIAMOND RESIDENTIAL MORTGAGE CORPORATION**

                                     By:

                                          /s/ Brett J. Natarelli
                                          One of its Attorneys

                                          Richard E. Gottlieb (rgottlieb@manatt.com)
                                          Brett J. Natarelli (bnatarelli@manatt.com)
                                          Manatt, Phelps & Phillips, LLP
                                          151 North Franklin Street
                                          Suite 2600
                                          Chicago, IL 60606
                                          T: (312) 529-6300
                                          F: (312) 529-6315

325249535.1